## UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH A CELLULAR DEVICE | Case No.   3:22MJ21 (TOF)  <br><br> **Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT AND AN ORDER PURSUANT TO 18 U.S.C §§ 3122 AND 3123

I, Garrett Fancher, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain cellular device assigned **860-913-3408** (the "**Target Telephone**"), that is in the custody or control of Sprint (the "Service Provider"), a wireless communications service provider that is headquartered at 6200 Sprint Parkway, Overland Park, KS 66251.  As a provider of wireless communications service, the Service Provider is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15).  The telephone number of the **Target Telephone** is subscribed to "Mando Pacheco" at "150 Barker Street Hartford CT 06114," a known address associated with Armando PACHECO.

2.      The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) and Federal Rule of Criminal Procedure 41 to require the Service Provider to disclose to the government the information further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

3.      Because I am seeking the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), I also make this affidavit in support of an application by the United States of America for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices (pen-trap devices) to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the **Target Telephone**.

4.      I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18 of the United States Code.  I have been employed as a Police Officer in Hartford, Connecticut since April 16, 2007.  I have been assigned to the Investigative Bureau of the Police Department at the rank of Detective since February of 2013, holding positions in the Vice, Intelligence and Narcotics Division; the Major Crimes Division; and the Special Investigations Division.  From February 2021 to the present, I have been assigned to the Drug Enforcement Administration ("DEA") Hartford Resident Office ("HRO") as a Task Force Officer ("TFO").

5.      During my experience in law enforcement, I have participated in investigations of diverse crimes, including investigations involving the illegal distribution of controlled substances.  In connection with these investigations, I have executed search and arrest warrants. I have also been involved in controlled purchases of illegal drugs utilizing cooperating sources; conducted electronic and physical surveillance of individuals involved in illegal drug distribution; and debriefed cooperating sources and drug distributors, as well as other local, state

2

and federal law enforcement officers, regarding the manner and means employed by narcotics traffickers, including the manner and means by which narcotics traffickers communicate, and those methods employed by narcotics traffickers in an effort to avoid detection by law enforcement.

6.     From my training and experience, I know that narcotics traffickers often use wireless telephones, and often speak to one another using coded, cryptic or slang words and phrases, in the belief that by doing so they can thwart the efforts of law enforcement to identify them and their activities and to seize their drugs, guns and/or other assets.  I also know that such individuals often frequently "drop," or "change" or otherwise terminate usage of one cellular telephone and begin usage of a new cellular telephone, in an attempt to thwart the efforts of law enforcement, and often possess and use multiple cellular telephones interchangeably for the same reason.  Furthermore, I know that drug traffickers and the couriers and transporters that work for sources of supply often compartmentalize operations by using different phones to communicate with different re-distributors so that if one part of the distribution operation is compromised by law enforcement, other aspects of the operation remain intact.  The use of multiple cell phones at the same time is one way to achieve such compartmentalization.

7.     The facts in this affidavit come from information obtained from cooperating sources, my personal observations and that of other law enforcement personnel, my training and experience, my review of documents, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

8.     The DEA is currently investigating fentanyl trafficking activities in the Hartford, CT area. Specifically, the DEA is conducting a criminal investigation into Armando PACHECO,

among others, regarding violations of Title 21 U.S.C. § 841(a)(1).  Based on the facts set forth in

this affidavit, there is probable cause to believe that violations of 21 U.S.C. § 841(a)(1)

(Distribution of Narcotics and Possession with Intent to Distribute Narcotics) (hereafter referred

to as the "Target Offense") has been committed, is being committed, and will be committed by

PACHECO and others yet identified.  There is also probable cause to search the information

described in Attachment A for evidence, instrumentalities, contraband, or fruits of these crimes

as further described in Attachment B.

9.      The Court has jurisdiction to issue the proposed warrant because it is a "court of

competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the Court is a district court

of the United States that has jurisdiction over the offense being investigated; *see* 18 U.S.C.

§ 2711(3)(A)(i).

## Probable Cause

10.     Since June of 2021, members of the DEA HRO have been investigating the

fentanyl trafficking of Armando PACHECO AKA "Green" and others in the Hartford, CT area.

Investigators believe that PACHECO and associates of PACHECO are trafficking street level

quantities of fentanyl in the Hartford, CT area.  In June of 2021, a Hartford Police Department

Confidential Source (hereinafter referred to as the "CS") reported that PACHECO was also

trafficking fentanyl.

### Acquisition of Fentanyl from PACHECO on June 21, 2021

11.     On June 21, 2021, members of the DEA HRO were conducting surveillance on

PACHECO in the area of Wethersfield Avenue in Hartford, CT.  During the surveillance

operation, I observed the operator of a grey Mercedes SUV (CT registration plate AY00847)

fitting the description of PACHECO, flag down and subsequently interact with an individual in a

second vehicle. PACHECO was observed giving the individual in the second vehicle a small object. Once the interaction concluded, surveillance was maintained on the second vehicle, and a short time later a traffic stop was conducted. During the stop, it was discovered through his own admission that the operator of the vehicle was given a "sample" from an individual—later determined to be PACHECO—which he voluntarily turned over to officers. The "sample" was a total of seven white wax paper sleeves containing a white powder substance, suspected to be fentanyl. The operator stated that the unknown individual provided the name of "Green" and gave him his telephone number, 860-913-3408, the Target Telephone. A photograph of PACHECO was shown to the operator, who he confirmed was "Green."[1]

### Intelligence regarding the trafficking of fentanyl by PACHECO

12.     Following an arrest in June of 2021, TFO Scott Vitelli of the New Haven Resident Office gathered intelligence during the debrief of a cooperating source ("CS-1"),[2] that an individual identifying himself as "Angel" would deliver multiple ounces of fentanyl to CS-1 on a weekly basis for a lengthy period of time. CS-1 provided TFO Vitelli the telephone number for "Angel," 860-913-3408—the **Target Telephone**. CS-1 further stated that "Angel" drove a grey SUV with Connecticut registration plate AY00847. As stated above, this vehicle, identified by its registration plate, is actively being used by PACHECO to traffic fentanyl. It should be noted that CS-1 has no In-House history with the Hartford Police Department, no known ties to the Hartford area, and no other means to explain his/her knowledge of PACHECO's vehicle and the **Target Telephone** number, aside from his/her direct involvement with the target.

---

[1] Please note that through the Affiant's training and experience, it's known that narcotics dealers commonly provide aliases to their customers and others involved in the illegal drug trade.

[2] CS-1 provided information to law enforcement for a very short period of time following CS-1's arrest in an unrelated matter. Although CS-1 has no convictions, CS-1 has several state charges pending including Possession with Intent to Distribute a Narcotic Substance, Criminal Possession of a Firearm and Possession with Intent/Amphetamine Substance. Because CS-1 provided information for a short period of time, your affiant does not know if any other information provided by CS-1 has been corroborated.

**Cooperating Source Information regarding PACHECO**

13.     In October of 2021, while conducting surveillance in the area of Broad Street in Hartford, I observed a motorist meet briefly with PACHECO and another unknown individual. Following the interaction, mobile surveillance was maintained on the motorist's vehicle, and a short time later an investigative stop was conducted.  During the stop, the driver/cooperating source ("CS-2") stated that he/she had just met with "Green" in Hartford.  He/she provided "Green's" telephone number, 860-913-3408 (the **Target Telephone**), and stated that he/she regularly uses this number to contact "Green" to purchase narcotics from him.

**Order of Approval for Pen Register and GPS information**

14.     On Wednesday, October 27, 2021, District of Connecticut United States Magistrate Judge Robert A. Richardson was presented an affidavit outlining this investigation and approved an order authorizing an E-911 Location Order and PEN register for telephone number (860) 913-3408, suspected to be utilized by Armando PACHECO to facilitate narcotics trafficking activities.

**Surveillance of PACHECO while conducting suspected narcotics transaction**

15.     On November 8, 2021, Armando PACHECO was observed leaving the residence of 1947 Broad Street in marker plate DZD4473.  Mobile surveillance was maintained as PACHECO dropped the unknown male off in the area of 34 Hughes Street.  PACHECO then proceeded to 121-123 Zion Street, where he was observed entering the multi-residential apartment building.  Shortly after, PACHECO was observed exiting the address while clutching a bulky object on his right side, and appeared to place it into the passenger side of the vehicle. PACHECO then got back into the driver's seat and returned to Hughes Street, where he picked the unknown male back up.

16.     The vehicle proceeded to 42 Maplewood Road in Storrs / Mansfield, CT, where an unknown female exited this address and made an exchange with the unknown male who was seated in the rear seats of the van.  Immediately after, the van pulled away and traveled to Citizens Bank in Manchester, CT, where PACHECO was observed entering the bank.  He was inside for approximately five minutes before he returned to the van, and then proceeded to Hartford, CT, where surveillance was terminated.

17.     Through various investigative avenues, the unknown female stated above has been tentatively identified as Christina IMSWILER, and has prior convictions for drug charges. The Affiant's training and experience suggests, due to the totality of these circumstances, that the meeting between IMSWILER and PACHECO (and the third party) was likely for the sole purpose of completing a narcotics transaction.

18.     Throughout the duration of the surveillance operation, ping location information corresponded with the various locations that PACHECO was observed, as he traveled to and from Hartford, CT on this date.

**Intelligence regarding PACHECO's association to other narcotics traffickers**

19.     On November 11, 2021, Hartford Police received a gunfire-property damage complaint at 121-123 Zion Street.  Upon arrival of patrol officers, it was discovered that an occupant of a third-floor apartment discharged a firearm, and the projectile went through the floor and into the wall of a second floor apartment.  The investigation led to a search warrant being executed on the third-floor apartment (address: 123 Zion Street, 3rd Floor North), which yielded the recovery of one spent 9mm shell casing, one unloaded 7.62 caliber "AK-47 style" 30 round magazine and approximately 19 grams of suspected crack cocaine.

20.     The resident of the address was identified by investigators as Adam SAMPSON, and he has been named as the primary suspect in their investigation.  Hartford Police In-House records list SAMPSON together with Anna ALICEA in a past incident, who is the girlfriend of Armando PACHECO.  No other occupants identified as living in this building have any ties or known links to PACHECO or his associates.  Furthermore, when analyzing the result of an investigative subpoena for the telephone number belonging to Adam Sampson, it was found that a telephone call was made to the telephone number associated with Anna ALICEA, approximately one hour prior to PACHECO's arrival at 121-123 Zion Street on November 8, 2021.  As a result of this, it is suspected that PACHECO went to 121-123 Zion Street on November 8, 2021 (as listed above), to meet with SAMPSON at his residence.

**Intelligence regarding PACHECO's association to known narcotics trafficking location**

21.     On November 17, 2021, through ping location information, PACHECO's vehicle was located parked in the lot of the Baymont Hotel in East Windsor, CT.  Surveillance was established on the vehicle, and a short time later PACHECO emerged from inside of the hotel with three other individuals, two males and one female.  All parties got into the suspect vehicle, and drove out of the lot in an unknown direction.

22.     Contact was made with hotel staff, who explained their knowledge of a particular room, Room 166, was known for selling drugs.  Upon viewing the hotel's video surveillance, it was discovered that PACHECO and his three associates arrived at the hotel and visited room # 166—the same room identified by hotel staff.  Approximately twenty minutes after their arrival, PACHECO and his associates are observed exiting room # 166, and exiting the building.

**Debrief of confidential Source Regarding Interaction with PACHECO**

23.     On November 19, 2021, a registered confidential Source ("CS"), first discussed in this affidavit as "CS-2", [3]  participated in an interview at an undisclosed location within the state of Connecticut.[3]  During the interview, the confidential source stated that he/she was in debt to PACHECO for an undisclosed amount of money after a recent narcotics transaction.  The CS stated that he/she did not possess the money needed to make the purchase, but agreed to pay at a later date in exchange for an amount of packaged fentanyl.  Since that time, the CS has yet to pay PACHECO and stated that he has been continually harassing him/her and making passive threats if payment is not made.

## Second Order of Approval for Pen Register and GPS Information

24.     On Friday, December 10, 2021, District of Connecticut United States Magistrate Judge Robert A. Richardson was presented an affidavit outlining this investigation and approved an order authorizing an E-911 Location Order and PEN register for telephone number (860) 913-3408, suspected to be utilized by Armando PACHECO to facilitate narcotics trafficking activities.

## Controlled Drug Purchase: December 20, 2021 - December 22, 2021

25.     Between the dates of December 20, 2021, and December 22, 2021, a Hartford Police Department registered confidential Source "CS-3" [4] was provided monies from the Hartford Police Investigative Fund and instructed to attempt to purchase an undisclosed amount

---

[3] CS-2 has provided information in the past that has been proven to be accurate and corroborated through various investigative avenues.  CS-2 has criminal history of possessing a controlled substance and assault.

[4] CS-3 has assisted in numerous investigations in the past that have yielded seizures of narcotics and other illegal contraband.  CS-3 has criminal history consisting of narcotics, robbery and larceny charges.

of illegal narcotics from Armando PACHECO.  The CS contacted PACHECO by calling the

**TARGET TELEPHONE** and made arrangements for the transaction. The CS was searched

thoroughly prior to being furnished with the funds, and was not found to be in possession of any

illegal narcotics or currency.  Visual contact was maintained as the CS proceeded to an agreed

upon meeting location, where he/she met with PACHECO and exchanged the provided funds for

undisclosed amounts of narcotics.  The CS then departed from this area and returned to the

prearranged meeting location, where he/she then turned over the purchased contraband to DEA

personnel.  The drugs were later field tested and produced positive reaction for traces of their

suspected illegal substances, fentanyl and cocaine.

### Controlled Drug Purchase: January 2, 2022 – January 4, 2022

26.     Between the dates of January 2, 2022 and January 4, 2022, "CS-3" was provided

DEA monetary funds and instructed to attempt to purchase an undisclosed amount of fentanyl

from Armando PACHECO.  The CS contacted PACHECO by calling the **TARGET**

**TELEPHONE** and made arrangements for the transaction.  He/she was searched thoroughly

prior to being furnished with the funds, and was not found to be in possession of any illegal

narcotics or currency.  Visual contact was maintained as the CS proceeded to an agreed upon

meeting location, where he/she met with PACHECO and exchanged the provided funds for

undisclosed amounts of narcotics.  The CS then returned to the prearranged meeting location,

where he/she then turned over the purchased contraband to DEA personnel.   The drugs were

later field tested and produced a positive reaction for traces of the suspected illegal substance

(fentanyl).

### Controlled Drug Purchase: January 4, 2022 – January 6, 2022

27.     Between the dates of January 4, 2022 and January 6, 2022, a DEA undercover Special Agent made arrangements with Armando PACHECO by calling the **TARTGET TELEPHONE** to meet with him for the purposes of purchasing narcotics, specifically fentanyl. During the conversation, the undercover agent was directed by PACHECO to meet him at an address within the city of Hartford.  Once at this location, PACHECO met with the undercover Agent and the transaction was made.  An undisclosed amount of suspected fentanyl was turned over to the Agent from PACHECO, and a portion of the contraband was later field tested, which produced a positive reaction for traces of fentanyl.

### General Information

28.     Based on my training, experience and participation in other narcotics investigations, drug traffickers usually carry their cell phone on their person to narcotics transactions to facilitate the meeting, to communicate with the associates they intend to meet with on an on-going basis and to keep track of the whereabouts of their associates en route to a meet location.  Having the cell phone on their person allows the meet location to be changed very quickly, which is often a counter-surveillance ploy.  In addition, having a cell phone on their person allows them to conduct business more efficiently and while on the move even when they visit stash locations or sources of supply.  Having the cell phone on their person also allows a drug trafficker to arrange other transactions while going to one transaction to ensure a consistent flow of business.  In addition, cell phones are used to coordinate activities with co-conspirators, such as coordinating activities between and among PACHECO and others regarding the acquisition of narcotics.  In addition, I know that cell phones are often used to track the delivery of parcels, as previously mentioned.

29.     Based on the foregoing, I believe that PACHECO is involved in a DTO that is distributing fentanyl in the Hartford, CT area, as well as other areas of the State.  I further believe that PACHECO currently is using the **Target Telephone** as his cellular phone.  I believe that information regarding the location of the **Target Telephone** will uncover significant evidence regarding PACHECO's narcotics distribution activities, including evidence regarding, among other things, the following: the locations where PACHECO and his associates conduct narcotics trafficking activities; how PACHECO is supplied and the manner in which PACHECO is supplied; the identities of PACHECO's narcotics trafficking associates; the locations where PACHECO and his associates stash narcotics; the locations where PACHECO and his associates stash narcotics proceeds; the vehicles, premises and other properties used by PACHECO and his associates to facilitate and conduct narcotics trafficking activities; and evidence regarding PACHECO's transfer, distribution and/or sale of narcotics to others.  Precise location information regarding the **Target Telephone** will help investigators with, among other investigative activities, conducting surveillance of PACHECO and his associates.

30.     In my training and experience, I have learned that the Service Provider is a company that provides cellular communications service to the general public.  I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records."  Cell-site data identifies the "cell towers" (*i.e.*, antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (*i.e.*, faces of the towers) to which the device connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.

Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data provides an approximate general location of the cellular device.

**Cell-Site Data**

31.     Based on my training and experience, I know that the Service Provider can collect cell-site data on a prospective basis about the **Target Telephone**.  Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication.   I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

**E-911 Phase II / GPS Location Data**

32.     I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data.  E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.  As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a

half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data is typically less precise that E-911 Phase II data.

33.     Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the **Target Telephone**, including by initiating a signal to determine the location of the **Target Telephone** on the Service Provider's network or with such other reference points as may be reasonably available.

## Pen-Trap Data

34.     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it.  Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number (ESN), a Mobile Electronic Identity Number (MEIN), a Mobile Identification Number (MIN), a Subscriber Identity Module (SIM), a Mobile Subscriber Integrated Services Digital Network Number (MSISDN), an International Mobile Subscriber Identifier (IMSI), or an International Mobile Equipment Identity (IMEI).  The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

## AUTHORIZATION REQUEST

35.     Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41 as, based on the facts set forth above, I believe that the location of the **Target Telephone** will lead to evidence of drug trafficking offenses.  I also request that the Court authorize the use of a pen register and trap

and trace device as the information sought is material and relevant to an on-going investigation into drug trafficking offenses.

36.     I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

37.     I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the **Target Telephone** on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The DEA shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

38.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days "after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **Target Telephone** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the

extent that the warrant authorizes the seizure of any wire or electronic communication (as

defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable

necessity for the seizure for the reasons set forth above.  *See* 18 U.S.C. § 3103a(b)(2).

39.     Because the warrant will be served on the Service Provider, who will then

compile the requested records at a time convenient to it, reasonable cause exists to permit the

execution of the requested warrant at any time in the day or night.  I further request that the

Court authorize execution of the warrant at any time of day or night, owing to the potential need

to locate the **Target Telephone** outside of daytime hours.

Respectfully submitted,

GARRETT FANCHER
(Affiliate)
Digitally signed by GARRETT
FANCHER (Affiliate)
Date: 2022.01.10 14:59:24 -05'00'

GARRETT FANCHER
TASK FORCE OFFICER, DEA

The truth of the foregoing affidavit has been attested to me by DEA Task Force Officer Garrett
Fancher over the telephone on this  10th   day of January, 2022, at Hartford, Connecticut.

Date: 2022.01.10
17:34:36 -05'00'

HON. THOMAS O. FARRISH
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

**Property to Be Searched**

1.  The cellular telephone assigned call number **860-913-3408,** with listed subscriber
    "Mando Pacheco" **(**the "Target Telephone"), whose wireless service provider is Sprint
    (the "Service Provider"), a wireless communications service provider that is
    headquartered at 6200 Sprint Parkway, Overland Park, KS 66251.

2.  Records and information associated with the **Target Telephone** that is within the
    possession, custody, or control of Sprint.

## ATTACHMENT B

### Particular Things to be Seized

**I.  Information to be Disclosed by the Provider:**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

1.  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the **Target Telephone** for a period of 30 days from the date of the warrant, including:

    a.  the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

    b.  information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received).

2.  Information associated with each communication to and from the **Target Telephone** for a period of 30 days from the date of the warrant, including:

    a.  Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

    b.  Source and destination telephone numbers;

    c.  Date, time, and duration of communication; and

d. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the **Target Telephone** will connect at the beginning and end of each communication.

3. Information about the location of the **Target Telephone** for a period of 30 days, during all times of day and night.  "Information about the location of the **Target Telephone**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information

a. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government.  In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the **Target Telephone** on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

b. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information.  *See* 18 U.S.C. § 3103a(b)(2).

4. This warrant does not authorize the seizure of any tangible property.

**II. Information to be Seized by the Government:**

All information described above in Section I that constitutes evidence, fruits, contraband, and

instrumentalities of violations of 21 U.S.C. § 841(a)(1) (distribution of narcotics and possession

with intent to distribute narcotics) involving PACHECO and others yet to be identified during

the thirty-day period from the date of the warrant. Law enforcement personnel (who may

include, in addition to law enforcement officers and agents, attorneys for the government,

attorney support staff, agency personnel assisting the government in this investigation, and

outside technical experts under government control) are authorized to review the records

produced by the Provider in order to locate the things particularly described in this Warrant.